1  WILKE FLEURY LLP
   DAN BAXTER (SBN 203862)
2  dbaxter@wilkefleury.com
   400 Capitol Mall, Twenty-Second Floor
3  Sacramento, California 95814
   Telephone:    (916) 441-2430
4  Facsimile:    (916) 442-6664

5  Attorneys for Plaintiffs

6

7                    UNITED STATES DISTRICT COURT

8                 SOUTHERN DISTRICT OF CALIFORNIA

9

   MICHAEL   CROSSLEY;   BART   BAILEY;        Case No.  **'20 CV 0284 GPC JLB**
10 LET THE VOTERS DECIDE, LLC; VALLEY
   DIRECT MARKETING LLC; IN THE FIELD,         **CLASS ACTION COMPLAINT FOR**
11 INC.;      DISCOVERY      PETITION          **VIOLATION OF FEDERAL AND**
   MANAGEMENT    LLC;   PIR   DATA             **CALIFORNIA CONSTITUTIONAL**
12 PROCESSING INC.; CAROLYN OSTIC dba          **RIGHTS, DECLARATORY,**
   VOTER    DIRECT,    and    CHRIS            **INJUNCTIVE, AND OTHER RELIEF**
13 BRENTLINGER    dba   BAY   AREA
   PETITIONS,                                  **DEMAND FOR JURY TRIAL**
14
                 Plaintiff,
15
        v.
16
   STATE    OF    CALIFORNIA;    XAVIER
17 BECERRA, in his capacity as Attorney General
   of the State of California; and "JOHN DOE," in
18 his/her official capacity,

19               Defendants.

20

21 ///

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

Plaintiffs MICHAEL CROSSLEY and BART BAILEY (collectively, the "Individual Plaintiffs"), and LET THE VOTERS DECIDE, LLC, VALLEY DIRECT MARKETING LLC, IN THE FIELD, INC., DISCOVERY PETITION MANAGEMENT LLC, PIR DATA PROCESSING, INC., CAROLYN OSTIC dba VOTER DIRECT, and CHRIS BRENTLINGER dba BAY AREA PETITIONS (collectively, "Company Plaintiffs") allege as follows:

**INTRODUCTION**

1.    Via this Complaint, Plaintiffs seek declaratory, injunctive, and other relief determining that California Assembly Bill 5 ("AB 5")—a recently enacted statute that became effective on January 1, 2020—is unconstitutional.

2.    Alternatively, Plaintiffs seek declaratory and injunctive relief determining that the Individual Plaintiffs, and the similarly-situated "Collectors" described herein, are independent contractors—rather than employees—under the so-called "ABC test" imposed by AB 5.

**PARTIES AND JURISDICTION**

3.    The Company Plaintiffs, for purposes relevant to the captioned action, are data processing entities (which entities will generally be referred to herein as "Data Processors") that utilize individuals and businesses (referred to herein as "Collectors") to collect signatures from registered voters on various ballot initiatives and referenda throughout the United States, including California. The Individual Plaintiffs are two such Collectors, having rendered services to various of the Company Plaintiffs pursuant to separately-executed independent contracts.

4.    Plaintiff Michael Crossley is an individual Collector who at all relevant times herein has resided in Riverside, California and provided the signature collection services discussed herein in and around the City of Riverside.

5.    Plaintiff Bart Bailey is an individual Collector who at all relevant times herein has resided in Temecula, California, and provided the signature collection services discussed herein in and around Riverside and San Diego Counties.

6.    Plaintiff Let The Voters Decide, LLC is a Data Processor organized and existing under the laws of the State of California that has to date utilized independent contractors such as Messrs. Crossley and Bailey to collect signatures from registered voters on various ballot initiatives

1  and referenda throughout the State of California.  Let The Voters Decide, LLC does business within
2  the State of California, including this district.

3      7.      Plaintiff Valley Direct Marketing LLC is a Data Processor organized and existing
4  under the laws of the State of California that has to date utilized independent contractors such as
5  Messrs. Crossley and Bailey to collect signatures from registered voters on various ballot initiatives
6  and referenda throughout the State of California. Valley Direct Marketing LLC does business within
7  the State of California, including this district.

8      8.      Plaintiff In The Field, Inc. is a Data Processor organized and existing under the laws
9  of the State of California that has to date utilized independent contractors such as Messrs. Crossley
10  and Bailey to collect signatures from registered voters on various ballot initiatives and referenda
11  throughout the State of California.  In The Field, Inc. does business within the State of California,
12  including this district.

13      9.      Plaintiff Discovery Petition Management LLC is a Data Processor organized and
14  existing under the laws of the State of California that has to date utilized independent contractors
15  such as Messrs. Crossley and Bailey to collect signatures from registered voters on various ballot
16  initiatives and referenda throughout the State of California.  Discovery Petition Management LLC
17  does business within the State of California, including this district.

18      10.     Plaintiff PIR Data Processing Inc. is a Data Processor organized and existing under
19  the laws of the State of California that has to date utilized independent contractors such as Messrs.
20  Crossley and Bailey to collect signatures from registered voters on various ballot initiatives and
21  referenda throughout the State of California.  PIR Data Processing Inc. does business within the
22  State of California, including this district.

23      11.     Plaintiff Carolyn Ostic is an individual doing business as a sole proprietorship called
24  Voter Direct, and is a Data Processor doing business within the State of California who has to date
25  utilized independent contractors such as Messrs. Crossley and Bailey to collect signatures from
26  registered voters on various ballot initiatives and referenda throughout the State of California.  Ms.
27  Ostic does business within the State of California, including this district.

28  / / /

12.    Plaintiff Chris Brentlinger is an individual doing business as a sole proprietorship called Bay Area Petitions, and is a Data Processor doing business within the State of California who has to date utilized independent contractors such as Messrs. Crossley and Bailey to collect signatures from registered voters on various ballot initiatives and referenda throughout the State of California. Mr. Brentlinger does business within the State of California, including this district.

13.    Defendant State of California is a sovereign State.

14.    Defendant Xavier Becerra is being sued in his official capacity as the Attorney General of the State of California, with authority to enforce AB 5.

15.    Defendant "John Doe" is a placeholder designation for any unidentified California official who has authority, or purports to have authority, to enforce AB 5 against Company Plaintiffs, in the event that additional officials must be included as defendants in this lawsuit in order to afford Plaintiffs complete relief.

16.    In light of the constitutional underpinnings of this action, this Court has subject matter jurisdiction pursuant to 28 U.S.C. sections 1331 1343(a)(3), and 1367.

17.    Venue is proper in this District on each of the grounds specified in 28 U.S.C. section 1391(b)(1) through (b)(3).

18.    With respect to the declaratory relief sought via this Complaint, an actual controversy exists between the parties concerning the constitutionality and validity of AB 5, as well as in regards to whether or not the Collectors are properly deemed "employees" under the "ABC test" imposed by AB 5, in that (1) Plaintiffs contend that AB 5 is unconstitutional and invalid, and that the Individual Plaintiffs and other Collectors remain independent contractors even under the ABC test, while (2) Defendants contend that AB 5 is constitutional and valid, and Plaintiffs further believe that Defendants contend that Collectors are employees under the ABC test. A declaration that the statute is invalid or that the Collectors are not employees thereunder, and/or an injunction against AB 5's enforcement (either in general or specifically relative to a reclassification of the Collectors as employees) would resolve the controversy, and Plaintiffs' right to such relief is thus appropriate for adjudication pursuant to 27 U.S.C. sections 2201 and 2202, as well as Federal Rules of Civil Procedure 57 and 65.

19.     A preliminary injunction enjoining Defendants from enforcing AB 5 against Company Plaintiffs would preserve the status quo and protect Plaintiffs' rights during the pendency of this action, and a permanent injunction would protect those rights after this action concludes.

## CLASS ACTION ALLEGATIONS

20.     <u>Class Definition</u>:  Plaintiffs bring this suit as a class action pursuant to Federal Rule of Civil Procedure, Rule 23, on behalf of themselves and all other similarly-situated persons and entities as a member of a Class defined as follows:

        a.      All Data Processors who utilize Collectors within the State of California to collect signatures from registered voters on various ballot initiatives and referenda within California as described herein, and who treat those Collectors as independent contractors.

        b.      All Collectors who, pursuant to independent contractor relationships with Data Processors, collect signatures from registered voters on various ballot initiatives and referenda within California as described herein.

21.     <u>Numerosity</u>:  The proposed class is sufficiently numerous in that there are approximately two dozen Data Processors operating within the State of California, utilizing a plethora of Collectors to perform the signature collection work described herein.  Class members are so numerous and widely-dispersed throughout the State of California that joinder of all class members is impracticable.

22.     <u>Common Questions of Fact and Law</u>: Common questions of fact and law exist as to all members of the class and predominate over any questions affecting solely individual members of the class.  Among the questions of fact and law that predominate over any individual issues are:

        a.      Whether AB 5 violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution because it draws classifications between various categories of workers without a rational basis for distinction;

        b.      Whether AB 5 violates the Article I, Section 3(b)(4) of the California Constitution because it draws classifications between various categories of workers without a rational basis for distinction;

/ / /

1      c.      Whether AB 5 violates Article I, Section 1 of the California Constitution by

2 infringing on the rights of Data Processors and Collectors to pursue their chosen profession;

3      d.      Whether AB 5 violates the Due Process Clause of the Fourteenth Amendment

4 of the United States Constitution because it interferes with the rights of Data Processors and

5 Collectors to pursue their chosen profession;

6      e.      Whether AB 5 violates Article I, Section 7 of the California Constitution by

7 infringing on the rights of Data Processors and Collectors to pursue their chosen profession;

8      f.      Whether AB 5 violates the Due Process Clause of the Fourteenth Amendment

9 of the United States Constitution because it constitutes a state law interfering with Data Processors'

10 and Collectors' right to petition, and to solicit support or opposition to political initiatives, and thus

11 "abridg[es] the freedom of speech, or of the press, or of the right of people peaceably to assemble";

12      g.      Whether AB 5 violates Article I, Section 7 of the California Constitution

13 because it interferes with Data Processors' and Collectors' right to petition, and to solicit support or

14 opposition to political initiatives, and thus constitutes an unlawful restraint on political speech;

15      h.      Whether AB 5 violates Article I, Sections 2 and 3 of the California

16 Constitution because it interferes with Data Processors' and Collectors' right to freely speak, write,

17 and publish political speech, to petition government for redress grievances, and to assemble freely

18 to consult for the common good, and thus constitutes an unlawful restraint on political speech;

19      i.      Whether AB 5 violates the Ninth Amendment to the United States

20 Constitution by divesting Data Processors and Collectors of the right to work on their own terms;

21      j.      Whether AB 5 violates the Article I, Section 24 of the California Constitution

22 by divesting Data Processors and Collectors of the right to work on their own terms;

23      k.      Whether AB 5 violates Article I, Section 10 of the United States Constitution

24 because it impairs Data Processors and Collectors from entering into and maintaining bargained-for

25 contracts;

26      l.      Whether AB 5 violates Article I, Section 9 of the California Constitution

27 because it impairs Data Processors and Collectors from entering into and maintaining bargained-for

28 contracts; and

1           m.     Whether Collectors are appropriately designated as employers or independent

2  contractors under AB 5's ABC test.

3        23.    <u>Typicality</u>: The claims of the Individual Plaintiffs and Company Plaintiffs are typical

4  of those held by the Data Processors and Collectors, respectively.

5        24.    <u>Representation</u>: The Individual Plaintiffs and Company Plaintiffs, and the

6  undersigned counsel, will fairly and adequately protect the interests of the class.

7  **FACTUAL BACKGROUND**[1]

8  ***The <u>Dynamex</u> Decision and Assembly Bill 5's Origins***

9        25.    On December 3, 2018, California Assemblywoman Lorena Gonzalez introduced AB

10  5. According to the bill, its purpose was to "codify the decision of the California Supreme Court"

11  in <u>Dynamex Operations West, Inc. v. Superior Court of Los Angeles</u>, 416 P.3d 1 (Cal. 2018)

12  ("<u>Dynamex</u>"), and to "clarify the decision's application in state law." AB 5 § l(d).

13        26.    <u>Dynamex</u> adopted a three-factor test—or "ABC test"—to determine whether a

14  worker is an independent contractor or an employee for purposes of the California Industrial Welfare

15  Commission's wage orders. The wage orders provide minimum wage, maximum hour, and working

16  condition requirements for specific industries.

17        27.    The wage order at issue in <u>Dynamex</u> imposes wage and hour obligations for

18  companies that "employ" workers, which the wage order defines as "to engage, suffer, or permit to

19  work." Construing that specific language, <u>Dynamex</u> concluded that workers are presumed to be

20  employees for purposes of the wage order unless three conditions are met:

21  _____

22  [1] Please note that large portions of Paragraphs 25 through 43 herein, which provide background concerning the contents, brokering, vetting, and implementation of AB 5, are duplicative and/or

23  derivative of material contained in the complaint filed by the law firm of Gibson, Dunn & Crutcher LLP in the case of <u>Olson et al. v. State of California et al.</u> (United States District Court for the

24  Central District of California, Case No. 2:19-cv-10956-DMG-RAO). This background is well-researched, and the undersigned has included it here in order to provide a more fulsome

25  understanding of AB 5's origins. The undersigned gives full credit to the Gibson, Dunn firm for its collection and presentation of this information. Various other passages in this Complaint, including

26  certain portions of Paragraphs 59, 60, and 63 through 65, and various of the charging allegations contained in the First through Fifth, Ninth through Thirteenth, and Fifteenth Causes of Action, are

27  also derivative of those contained in the <u>Olson</u> complaint. This duplication/derivation in no way

28  minimizes the accuracy of the listed allegations as they relate to Plaintiffs herein.

1    A. The individual is free from control and direction in connection
2    with the performance of the service, both under his contract for the
     performance of service and in fact;

3    B. The service is performed outside the usual course of the business
     of the employer; and
4
5    C. The individual is customarily engaged in an independently
     established trade, occupation, profession or business of the same
     nature as that involved in the service performed.
6

7    416 P.3d at 48.

8    28.    Although <u>Dynamex</u> applied the ABC test solely for purposes of California's wage

9    orders, AB 5 codifies the ABC test for purposes of those wage orders, and expands it to apply to the

10   entirety of the California Labor Code and the California Unemployment Insurance Code. See <u>Garcia</u>

11   <u>v. Border Transp. Grp., LLC</u>, 28 Cal.App.5th 558, 561, 570 (2018) (explaining that "<u>Dynamex</u> did

12   not purport to [apply] in every instance where a worker must be classified as either an independent

13   contractor or an employee," and that "<u>Dynamex</u> does not apply" to "non-wage-order claims"

14   (emphasis omitted)).

15   29.    Specifically, Section 2 of AB 5 adds a new provision to Article 1 of the California

16   Labor Code, Section 2750.3, that incorporates the ABC test verbatim. Section 3(i) of AB 5 amends

17   the definition of "employee" in the Labor Code by linking that definition to the new Section 2750.3.

18   And Section 4 of AB 5 amends Section 606.5 of the Unemployment Insurance Code to incorporate

19   the definition of "employee" in Section 621 of the Code—a provision that, in turn, Section 5 of AB

20   5 amends to also incorporate <u>Dynamex's</u> ABC test. The Unemployment Insurance Code requires

21   employers to pay unemployment insurance contributions for all of their employees. See Cal. Unemp.

22   Ins. Code §§ 976, 977 (West 2019). Employers must also account for administrative costs associated

23   with withholding unemployment insurance taxes, paying them over to the State, keeping extensive

24   records of these transactions, and complying with recurring reporting requirements. See <u>id</u>. §§

25   13020, 13021.

26   30.    AB 5 also transforms employment regulations into potential criminal liability. Any

27   employer who fails to withhold or pay these taxes, regardless of intent, could be guilty of a

28   misdemeanor and subject to fines up to $1,000 for each occurrence, as well as up to one year of

1  imprisonment. Id. § 2118. Additionally, employers who fail to comply with numerous

2  Unemployment Insurance Code provisions and regulations are potentially liable for dozens of

3  penalties. See, generally, Cal. Emp't Dev. Dep't, Penalty Reference Chart (2018),

4  https://www.edd.ca.gov/pdf_pub_ctr/de231ep.pdf. Just a handful of examples include fines for

5  failing to report the hiring of a new or rehired "employee" within the prescribed time limit (Cal.

6  Unemp. Ins. Code § 1088); failing "to file a report of wages of each of [its] workers on magnetic

7  media or other electronic means" (id. § 1114(b)); filing a false statement of withholdings to an

8  "employee" (id. § 13052); or failing to supply a required "identifying number" (id. § 13057(a)).

9      31.    AB 5 states that it may be enforced by the California Attorney General or "a city

10  attorney of a city having a population in excess of 750,000, or by a city attorney in a city and county

11  or, with the consent of the district attorney, by a city prosecutor in a city having a full-time city

12  prosecutor in the name of the people of the State of California upon their own complaint or upon

13  the complaint of a board, officer, person, corporation, or association." AB 5 § 2(j). The lawsuits

14  may seek injunctive relief "to prevent the continued misclassification of employees as independent

15  contractors," in addition to "any other remedies available." Id.

16  ***AB 5's Exemptions***

17      32.    AB 5 spends only a few lines adopting Dynamex's ABC test for the entire California

18  Labor Code and California Unemployment Code. The vast majority of the statute is a morass of

19  complicated provisions exempting dozens of occupations from that test, which carve-outs were

20  added by the Legislature solely for interest groups and labor.

21      33.    Under Section 2(a)(2) of the statute, the exempted workers are governed by the

22  alternative "control-of-the-work" test from S. G. Borello & Sons, Inc. v. Department of Industrial

23  Relations, 769 P.2d 399 (Cal. 1989) ("Borello"); AB 5 thus does not apply Dynamex to these

24  exempted workers.

25      34.    The Borello test uses a multi-factor balancing analysis—where no one factor is

26  dispositive—to determine whether a worker is an employee or an independent contractor. Signaling

27  that the exemptions included in AB 5 were meant to allow independent contractor relationships to

28  continue for the exempted businesses, Assemblywoman Gonzalez stated that Borello "was weighted

1  heavily against. . .trying to prove misclassification."[2]

2      35.    The statutory exemptions carve out most types of workers traditionally considered to

3  be independent contractors, including:

4          a.    <u>Workers engaged in occupations requiring licenses</u>, *see* AB 5 § 2(b)(1)-(4),

5              (6), including:

6              i.    licensed insurance agents and other individuals requiring insurance

7                  license;[3]

8              ii.    certain licensed individuals in the medical profession (physicians,

9                  surgeons, dentists, podiatrists, psychologists, and veterinarians), so

10                  long as they are providing medical or professional services to or by a

11                  health care entity;[4]

12              iii.    licensed attorneys, architects, engineers, private investigators, and

13                  accountants;

14              iv.    registered or licensed securities broker-dealers or investment

15                  advisers; and

16              v.    commercial anglers working on American (but not foreign) vessels.

17          b.    <u>Direct sales workers as described in Section 650 of the California</u>

18              <u>Unemployment Insurance Code</u>. AB 5 § 2(b)(5).

19              i.    A direct sales salesperson generally is anyone "engaged in the trade

20                  or business of primarily in person demonstration and sales

21                  presentation of consumer products, including services or other

22  _____

23  [2] @LorenaSGonzalez, Twitter (Dec. 25, 2019, 10:57 AM),
   https://twitter.com/LorenaSGonzalez/status/1209911130522406913?s=20.

24

25  [3] Specifically, "[a] person or organization who is licensed by the Department of Insurance
   pursuant to Chapter 5 (commencing with Section 1621), Chapter 6 ( commencing with Section
26  1760), or Chapter 8 (commencing with Section 1831) of Part 2 of Division 1 of the Insurance
   Code." AB 5 § 2(b)(l).

27  [4] AB 5 exempts from the provision concerning medical occupations "employment settings
28  currently or potentially governed by collective bargaining agreements." AB 5 § 2(b)(2).

1        intangibles, in the home." Cal. Unemployment Ins. Code § 650(a).

2    c.    Professional service providers, *see* AB 5 § 2(c)(2)(B)(i)-(xi), including those

3        who provide:

4        i.    marketing services;

5        ii.    human resources services;

6        iii.    travel agent services;

7        iv.    graphic design services;

8        v.    grant writing services;

9        vi.    fine artist services;

10       vii.    services of agents licensed by the U.S. Treasury to practice before the

11            IRS;

12       viii.    payment processing agent services;

13       ix.    photography or photojournalist services;

14       x.    services provided by a freelance writer, editor, or newspaper

15            cartoonist;[5] and

16       xi.    services provided by a licensed esthetician, electrologist, manicurist,

17            barber, or cosmetologist.

18    d.    Real estate licensees and repossession agencies. AB 5 § 2(d)(l)-(2).

19    e.    "[B]usiness-to-business contracting relationship[s]," subject to certain

20        conditions. AB 5 § 2(e).

21    f.    Contractors and subcontractors in the construction industry, subject to certain

22        conditions. AB 5 § 2(f).

23    g.    Subcontractors providing construction trucking services—*i.e.*, "hauling and

24        trucking services provided in the construction industry"—subject to certain

25        conditions. AB 5 § 2(f)(8).

26    _____

27    [5] This exemption applies to a "freelance writer, editor, or newspaper cartoonist who does not
provide content submissions to the putative employer more than 35 times per year." AB 5 §
28    2(c)(2)(B)(x).

h.   <u>Referral agencies and service providers, subject to certain conditions.</u>  AB 5 § 2(g).

i.   <u>Motor clubs and individual motor club service providers.</u> AB 5 § 2(h).

36.   There is no rhyme or reason to these exemptions, and many of them are wholly arbitrary. For example, a delivery truck driver is exempt when delivering milk, but not when delivering juice, fruit, baked goods, or meat products. See AB 5 § 5(c)(l)(A). A commercial fisherman is exempt when working on an American vessel, but not a foreign vessel. <u>Id</u>. § 2(b)(6). An ophthalmologist is exempt, but an optometrist is not. <u>Id</u>. § 2(b)(2). And a freelance editor or writer is exempt if she publishes 35 submissions per year per "putative employer," but not if she publishes 36. <u>Id</u>. § 2(c)(2)(B)(x). When asked about this 35-submission cutoff, Assemblywoman Gonzalez said: "Was it a little arbitrary? Yeah."[6] News articles report that "employers and workers in other industries including truck drivers, therapists, and entertainers say it is unclear how AB 5 will affect them, leading some to take precautionary measures and others to say they hope a court will clarify the matter soon."[7]

37.   AB 5 does not identify any data, studies, reports, or other justification or explanation for its exemptions.

38.   The Legislature included many of the exemptions as political favors or to politically favored groups without any valid legislative purpose or rational basis. At least one legislator warned during the debate over AB 5's passage that the legislation "undermines the principle of equal treatment under the law and deprives many Californians the right to be their own bosses, by

---

[6] Katie Kilkenny, <u>"Everybody Is Freaking Out": Freelance Writers Scramble to Make Sense of New California Law,</u> The Hollywood Reporter (Oct. 17, 2019), https://www.hollywoodreporter.com/news/everybody-is-freaking-freelancewriters-scramble-make-sense-new-california-law-1248 I 95 (internal quotation marks omitted) ( quoting Assemblywoman Gonzalez).

[7] Katy Grimes, <u>California's Independent Contractors Are About to Become Dependent Employees - or Unemployed,</u> California Globe (Dec. 17, 2019), https://lcalifomiaglobe.com/section-2/californias-independent-contractors-are-about-to-become-dependent-employees-or-unemployed/.

1  exempting some industries over others."[8]

2      39.    In the months preceding the passage of AB 5, the California Labor Federation

3  circulated a one-page form that business groups could complete to request an exemption from the

4  statute. These "opt out" forms were the idea of Assemblywoman Gonzalez's staff, who then in turn

5  worked to amend the bill to create additional exemptions based upon the relative interest from labor

6  groups in specific businesses seeking an exemption. This process played out repeatedly and is

7  responsible for the irrational and arbitrary results of the final bill.[9]  Indeed, Assemblywoman

8  Gonzalez touted the fact that the bill reflected the unions' bare political interests to irrationally

9  benefit friends and harm others, explaining at the time of its passage in the California Assembly that

10  "I am a Teamster .... I am the union."[10]

11  ***AB 5's Penalty Provisions***

12      40.    As explained above, AB 5 codifies the ABC test in a new Section 2750.3 of the Labor

13  Code. Dozens of provisions of the Labor Code provide criminal penalties for violations, in addition

14  to any civil penalties that also may attach.

15      41.    A few examples of the criminal penalties in the Labor Code with which companies

16  could be threatened if Defendants enforce AB 5 against them in the manner consistent with the

17  sponsors' stated intent include:

18              a.    Labor Code § 553: Misdemeanor for violation of provisions related to

19                    overtime, meal periods, alternative workweeks, makeup work time, and rest

20                    days.

21

22  [8] Christine Mai-Due and Lauren Weber, It Isn't Just Uber: California Prepares for New Gig

23  Worker Rules...and Confusion, Wall Street Journal (Dec. 17, 2019),
https://www.wsj.com/articles/confusion-in-califomia-as-gig-worker-law-set-totake-effect-

24  11576590979.

25  [9] In addition, Assemblywoman Gonzalez has promised a "part 2 to the bill," apparently to add
more exemptions for politically favored groups. @LorenaSGonzalez, Twitter (Nov. 21, 2019, 7:45

26  AM), https://twitter.com/lorenasgonzalez/status/1197541485056409611?s=12.

27  [10] @LorenaGonzalez, Twitter (May 30, 2019, 7:23 AM),

28  https://twitter.com/lorenasgonzalez/status/1134087876390428672?s=21.

b.   Labor Code § 1199: Misdemeanor punishable by a fine and/or imprisonment for up to 30 days for failing to pay minimum wage.

c.   Labor Code § 225: Misdemeanor for violating certain provisions regarding wage withholdings.

d.   Labor Code § 226.6: Misdemeanor punishable by a fine of up to $1,000 and/or imprisonment of up to one year for failing to comply with itemized paystub requirements.

e.   Labor Code § 227: Felony punishable by imprisonment of up to five years and/or a fine of up to $1,000 for failing to make certain required payments to a health or welfare fund, pension fund, vacation plan, or similar benefit fund.

42.   AB 5 also extends the ABC test to the Unemployment Insurance Code, which imposes civil penalties for various violations, including:

a.   Unemployment Insurance Code § 1088.5(e): Fine of $24 per employee for failing to report the employee's hire within a specified time.

b.   Unemployment Insurance Code § 1112(a): Penalty of 15% for failure to pay unemployment contributions when due.

c.   Unemployment Insurance Code § 1126.1: Fine of $100 per unreported employee for failure to register as an employer.

43.   The Private Attorneys General Act also authorizes employees to sue to recover civil penalties for Labor Code violations, including misclassification. See Cal. Labor Code §§ 2698 et seq. Employees may sue on behalf of themselves, other employees, or the State of California. In addition to seeking any civil penalties that the Labor and Workforce Development Agency may assess under the Labor Code, the Act allows the private plaintiffs to seek a civil penalty of $100 "for each aggrieved employee per pay period" for an "initial violation," and $200 "for each aggrieved employee per pay period for each subsequent violation." Id. § 2699(f)(2).

***The Company Plaintiffs and the Signature Collection Process***

44.   The Company Plaintiffs are Data Processors that utilize Collectors like the Individual Plaintiffs to collect signatures from registered voters on various ballot initiatives and referenda

1   throughout the United States, including California.

2       45.     The relationship between the Company Plaintiffs and Collectors like the Individual

3   Plaintiffs begins with either a brief informational meeting or an even less formal initial interaction

4   wherein the Company Plaintiffs explain to the Collectors how the signature collection process

5   works, and how the Collectors will be compensated for that collection.

6       46.     Since the Collectors—some of whom are individuals, some of whom are businesses

7   —are the ones who harvest the signatures at issue, the quantity and quality of their production of

8   signatures varies greatly, and is thus most easily facilitated via a piece rate commission system.

9   Once a Collector brings completed signature forms to a Data Processor, the Data Processor inspects

10  (and if necessary, improves) the quality of the petition forms for resale to its various downstream

11  clients.

12      47.     The raw form in which the signatures are submitted by the collectors to the Data

13  Processors is almost always insufficient for turnover to the latter's clients, so the Data Processor's

14  visual inspection of the signatures (for completeness, rate of registered voters to nonregistered

15  voters, and the existence of non-qualified, deficient, and/or duplicate signatures) and refinement of

16  those signature batches is what separates the raw product the Data Processors buy from Collectors

17  from the end product the Data Processors' downstream clients need in order to qualify their

18  measures. The commissions the downstream clients pay the Data Processors for their batched,

19  refined signatures are later compared to the commissions paid the Collectors, and reconciled to

20  ensure the commissions calculated are correct.

21      48.     The Data Processors' only interactions with the Collectors after the aforementioned

22  initial interactions referenced in Paragraph 45, *supra*, are when the Collectors come to the Data

23  Processors' office, at a time of their choosing, to turn over the petition forms/signatures and submit

24  an invoice for payment.

25      49.     There is little uniformity in the time and manner in which Collectors work.  Some

26  Collectors work full time, some work part-time, and some work in very short segments (sometimes

27  less than half an hour) per week. Similarly, the Collectors also utilize different venues for finding

28  the signatures. Some stand at fixed, public locations, some primarily work at public events, and

1  some walk door-to-door in their neighborhoods.

2       50.    As evidenced by the above, Data Processors like the Company Plaintiffs have no

3  control whatsoever, and seek to exert none, over the time, place, and specific manner of the

4  Collectors' work. The Collectors alone choose when to work, where to work (and how to get there),

5  and how they will go about gathering the signatures at issue. Indeed, as a further emblem of their

6  independence, since the total amount of signatures any given campaign may need is fixed, the

7  Collectors have a vested interest in not disclosing to the Data Processors or their fellow Collectors

8  where or how they found the voters at issue. In short, the Collectors are "free from the control and

9  direction of the hiring entity in connection with the performance of the work, both under the contract

10  for the performance of the work and in fact." AB 5 § 2(a)(1)(A).

11       51.    In addition, the work performed by the Collectors is fundamentally different from

12  that performed by the Data Processors, and thus "outside the usual course of the hiring entity's

13  business." AB 5 § 2(a)(1)(B). In that regard, the Collectors sole' relevant work task is to collect

14  voter signatures, and their sole relevant deliverable is the signatures themselves. The Data

15  Processors, on the other hand, play no role in the collection process, and instead focus their efforts

16  on the processing and packaging of the signatures for ultimate turnover to the downstream clients.

17  ***Michael Crossley***

18       52.    Michael Crossley is, as mentioned above, an individual residing in Riverside,

19  California. Mr. Crossley is married, with four young children, including one-year-old twins. Mr.

20  Crossley has worked at a variety of jobs over the years, including as a car salesperson, selling

21  DirecTV units in retail stores, and operating as a solar array sales consultant. In 2015, Mr. Crossley

22  began working as a driver for Uber and Lyft to earn extra money. After he and his wife had their

23  third child in 2016, Mr. Crossley realized that he needed an additional income source in order to

24  support his family; thus, in 2017, he began to work as a Collector for various Data Processors,

25  including one or more of the Company Plaintiffs herein.

26       53.    A typical "day in the life" for Mr. Crossley is to drop his twin boys off at school in

27  the morning, after which he goes to a local Walmart or similar public venue to engage in signature

28  collection. Usually, he turns in signatures to one of the Company Plaintiffs, or a similarly-situated

1   Data Collector, on Tuesdays and Fridays, in exchange for which he receives a commission check.

2       54.    At all relevant times, Mr. Crossley worked as an independent contractor, entering

3   into separate contracts with the Company Plaintiffs or similarly-situated entities on a petition-by-

4   petition basis. The flexibility associated with his independent contracting work is such that he can

5   work in a manner that best accommodates his wife and children's respective schedules, without

6   worrying about the regimented "clock punching" attendant to employment. Mr. Crossley views his

7   time as being worth far more to him than it would be to a potential "employer," and is also able to

8   earn more from working in a flexible, independent, capacity than he would if considered to be an

9   "employee" for one or more of the Company Plaintiffs.

10  ***Bart Bailey***

11      55.    Bart Bailey is, as mentioned above, an individual residing in Temecula, California.

12  Mr. Bailey is married, with three adult children and four adult stepchildren, along with seventeen

13  grandchildren. Following 10 years of service in the United States Navy, Mr. Bailey worked in the

14  fire and safety industry for approximately 15 years. In 2014, Mr. Bailey and his wife began working

15  in the insurance industry, but due to the extremely high cost of procuring insurance-related "leads,"

16  Mr. Bailey began driving for Lyft and Uber in order to earn extra money. As the combined income

17  from his insurance work and driving was inadequate to make ends meet, Mr. Bailey began collecting

18  signatures for ballot initiatives and referenda as a source of income supplementation. For the last

19  two years, Mr. Bailey has worked nearly every day as a Collector, driving for Lyft and Uber, and/or

20  selling insurance policies.

21      56.    To facilitate his work as a Collector, Mr. Bailey typically gathers signatures in

22  storefronts, at festivals, at parades, or any other outdoor opportunity that is available. Mr. Bailey

23  then sells those signatures to one of the Company Plaintiffs, or a similarly-situated Data Processor,

24  at a fixed dollar amount that varies from petition to petition.

25      57.    Like Mr. Crossley, Mr. Bailey at all relevant times worked as an independent

26  contractor, entering into separate contracts with the Company Plaintiffs or similarly-situated entities

27  on a petition-by-petition basis. The flexibility associated with his independent contracting work is

28  such that he can work in whatever capacity he chooses, more or less, or not at all, on any given day.

1  Also like Mr. Crossley, Mr. Bailey views his time as being worth far more to him than it would be

2  to a potential "employer," and is also able to earn more from working in a flexible, independent,

3  capacity than he would if considered to be an "employee" for one or more of the Company Plaintiffs.

4      58.     Messrs. Crossley and Bailey, and Collectors generally, are customarily engaged in

5  the work of signature gathering, performing work for multiple Data Processors on many measures.

6  ***The Adverse Effect of AB 5's Enforcement***

7      59.     If AB 5 were enforced against Plaintiffs to require reclassifying the Collectors as

8  employees, and to thus deny the Data Processors the ability to independently contract with

9  Collectors, the Company Plaintiffs and similarly-situated Data Processors would be forced to

10  change their business model. Existing independent contracts between the Data Processors and the

11  Collectors would be invalidated, depriving many part-time Collectors of the opportunity to work in

12  the manner that provides the most flexibility for them.

13      60.     Indeed, there are thousands of Collectors in California, and Data Processors like the

14  Company Plaintiffs separately contract with myriad Collectors like the Individual Plaintiffs. If

15  Company Plaintiffs and other Data Processors are forced to change their business models to employ

16  all Collectors, or to stop doing business in the State because of an inability to employ all of the

17  Collectors they utilize, it will harm both their actual employees and the Collectors with whom they

18  contract.

19      61.     Through the signature collection process described herein, the Individual Plaintiffs

20  and Company Plaintiffs collectively perform an important civic service through which significant

21  issues of public interest are aired and vetted through votes placed at the ballot box on Election Day.

22  Indeed, since 2000, publicly-beneficial laws such as the following germinated from exactly the

23  process described herein:

24      a.     Proposition 20 (March 2000): Directing a portion of California state lottery

25          proceeds to the purchase of student textbooks.

26      b.     Proposition 32 (November 2000): Imposing political campaign spending

27          limits and disclosure requirements.

28      c.     Proposition 41 (March 2002): Setting aside $200 million in bond money for

1    voting modernization.

2    d.    Propositions 46 and 47 (November 2002): Collectively setting aside billions

3    of dollars in bond money for housing, emergency shelter, and educational

4    facilities.

5    e.    Proposition 58 (March 2004): Requiring the balancing of the State of

6    California's budget.

7    f.    Proposition 63 (November 2004): Increasing taxes to expand mental health

8    services.

9    g.    Propositions 1B-1E and 84 (November 2006): Collectively setting aside

10    billions of dollars in bond money for highway safety, air quality, housing,

11    emergency shelter, educational facilities, disaster preparedness, and flood

12    control.

13    h.    Propositions 3 and 12 (November 2008): Collectively setting aside nearly $2

14    billion in bond money for children's hospitals and home/farm purchasing

15    assistance for veterans.

16    i.    Proposition 41 (June 2014): Setting aside $600 million in bond money to

17    provide multifamily housing to veterans.

18    j.    Proposition 1 (November 2014): Setting aside $7.12 billion in bond money

19    for California's water system.

20    k.    Proposition 58 (November 2016): Repealing bilingual education restrictions.

21    l.    Proposition 68 (June 2018): Setting aside $4 billion in bond money for parks,

22    environmental protection, and water infrastructure.

23    m.    Proposition 72 (June 2018): Excluding rainwater capture systems from

24    property tax assessments.

25    n.    Propositions 1 and 4 (November 2018): Collectively setting aside billions in

26    bond money for housing programs, veterans home loans, and children's

27    hospitals.

28    o.    Proposition 12 (November 2018): Banning sale of meat from animals

1                     confined in spaces below specific sizes.

2        62.    In absence of the relief sought herein, the ineluctable reduction in the number of

3 Collectors will cause a chilling effect on the collective ability of the Plaintiffs to perform this civic

4 service, and a resulting chilling effect on the ability of interested parties to seasonably secure public

5 support for the placement of important initiatives on the election ballot.

6        63.    Moreover, the contracts between most Data Processors, including the Company

7 Plaintiffs herein, and Collectors explicitly classify, or otherwise treat, the Collectors as independent

8 contractors. Those contracts make clear that the Data Processors do not have certain obligations to

9 the Collectors as employees under the Labor Code, and also that the Collectors do not have the same

10 obligations to the Data Processors as they would if the latter were traditional "employers." If AB 5

11 were enforced to require Data Processors to reclassify Collectors, the described contracts would

12 become invalid, unlawful, or otherwise unenforceable. Similarly, enforcement of AB 5 in such a

13 manner would require Data Processors to reclassify Collectors as employees, imposing major

14 administrative, payroll, legal, and other burdens on them, and possibly forcing them out of business.

15        64.    Collectors, too, could face reduced work opportunities and more taxes, as

16 reclassification would make it more difficult for them to claim federal income tax deductions for

17 business expenses and could preclude them from benefiting from other tax deductions. Perhaps even

18 more fundamentally, whereas Collectors can currently choose to collect wherever and whenever

19 they wish, totally controlling their own schedule and income opportunities, an employment model

20 is invariably based on set shifts in a dedicated location during set hours. To insist on a wholesale

21 reclassification would thus have highly adverse effects on Collectors' pocketbooks and calendars.

22        65.    These adverse consequences for workers could be especially substantial for the vast

23 majority of Collectors who work for—and choose among—multiple Data Processors when

24 searching for work opportunities. Instead of being an independent service provider who can pick

25 and choose which tasks to perform and where to perform them, the new employees will have to pick

26 one "employer" to work for—and do so under the direction of that new employer. The flexibility

27 described above would be replaced with a rigid and inflexible 9-to-5 business model, to the

28 detriment of Data Processors, Collectors, California voters, and the public at large.

**FIRST CAUSE OF ACTION**

**(Declaratory Relief: Violation of the U.S. Constitution's Equal Protection Clause)**

66.    Plaintiffs reallege and reincorporate Paragraphs 1 through 65 of this Complaint as though fully set forth herein.

67.    AB 5 violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution because it draws classifications between various categories of workers without a rational basis for distinction.  Likewise, the statute draws irrational distinctions between independent service providers and non-independent service providers that perform substantially the same work, disfavoring independent service providers relative to similarly situated non-independent service providers. Laws unconstitutionally singling out a certain class of citizens for disfavored legal status or general hardships are rare. AB 5 is such an exceptional and invalid form of legislation.

68.    No sophisticated economic analysis is required to see the pretextual nature of California's proffered explanations for AB 5's differential treatment. There is no rational distinction between Data Processors and many of the companies granted exemptions under AB 5, nor between many other groups of exempted (e.g., optometrists) versus non-exempted (e.g., ophthalmologists) groups. The California Legislature's focus on some businesses, but not others, and its willingness to grant a laundry list of pell-mell company exemptions in order to spare those types of companies the costs and burdens of complying with AB 5, demonstrates irrational animus against non-exempted companies in violation of the latter's equal protection rights. This type of singling out, in connection with a rationale so weak that it undercuts the principle of non-contradiction, fails to meet even the relatively easy standard of rational basis review.

69.    Strict scrutiny review applies because AB 5 is designed to burden certain companies and industries and, if enforced against Collectors like the Individual Plaintiffs and Data Processors like the Company Plaintiffs such as to force reclassification of the former group, would burden the fundamental rights of Data Processors and Collectors to pursue their chosen professions and determine when and how they earn a living.

70.    In addition, there is no rational basis for favoring some businesses and disfavoring others relative to the application of the ABC test. For example, AB 5 ostensibly exempts business-

WILKE FLEURY LLP
ATTORNEYS AT LAW
SACRAMENTO

2535779.4

-21-

CLASS ACTION COMPLAINT

Case No.

1    to-business services, freelance writers, grant writers, graphic designers, insurance agents, direct

2    sellers, manicurists, hair dressers, and real estate agents. The independence, autonomy, and other

3    characteristics of these types of workers are substantially similar to Collectors like the Individual

4    Plaintiffs.

5    71.    If the California Legislature's goal in enacting AB 5 truly was to protect workers

6    from perceived harms caused by perceived misclassification and to prevent employers from skirting

7    their earnings and safety obligations, the statute would not contain the dozens of exemptions that

8    leave so many workers outside of its purportedly protective umbrella. Where, as here, the breadth

9    of the statute is so untethered from the reasons offered for it that the statute seems inexplicable by

10   anything but animus toward those who remain non-exempted, the statute lacks a rational relationship

11   to legitimate state interests. And where, as here, the exclusion of certain workers from licensing

12   requirements is inconsistent with asserted state interests, the law violates equal protection.

13   72.    This sort of malicious, irrational, and plainly arbitrary action by state officials defeats

14   AB 5 under the rational relation test.

15   73.    The manner in which AB 5's exemptions were created further confirms that the

16   statute violates the Equal Protection Clause. Many exemptions resulted from "back door" deals and

17   political favors to industry groups, neither of which reflect a valid legislative purpose.[11] For

18   example, "among truckers, only those who tow disabled vehicles or haul building construction

19   materials obtained exemptions."[12]

20   74.    Legislatures may not draw lines for the purpose of arbitrarily excluding individuals,

21   including by doing so as a concession to one constituent but not another. Yet, the sponsors of AB 5

22   included the exemptions solely in response to the demands of political constituents.

23   75.    Moreover, although its legislative proponents claim that the statute will prevent

24   _____

25   [11] See George Skelton, Labor Won Big With Bill to Rewrite California Employment Law—But It's Flawed, L.A. Times (Sept. 12, 2019), https://www.latimes.com/california/story/2019-09-11/skelton-ab5-independent-contractors-california-employment-law ("How do you qualify for an exemption? Answer: pressure and persistence. Better also hire a lobbyist. And, of course, it helps to be a political supporter." (internal quotation marks omitted)).

28   [12] Skelton, *supra* note 11.

"exploitation" of independent service providers, if enforced consistent with AB 5 sponsors' stated intent, AB 5 will void the Collectors' valuable contracts with the Data Processors and cripple their fundamental right to pursue their lawful occupation, while simultaneously carving out a laundry list of exemptions for dozens of classes of independent contractors who are, by the logic employed by AB 5's proponents, equally "exploited" by the businesses with whom they contract. By the sponsors' logic, AB 5 makes it more likely that workers in the exempted businesses will be "exploited," given that the statute excludes those workers from the <u>Dynamex</u> standard to which they would otherwise be subject for certain wage order claims. Thus, AB 5 is so untethered from the reasons offered for it that it is inexplicable by anything but animus toward the class it is designed to affect, lacks a rational relationship. to legitimate state interests, and violates equal protection.

76.     Plaintiffs have no adequate remedy at law.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

### SECOND CAUSE OF ACTION

**(Declaratory Relief: Violation of the California Constitution's Equal Protection Clause)**

77.     Plaintiffs reallege and reincorporate Paragraphs 1 through 76 of this Complaint as though fully set forth herein.

78.     For substantially the same reasons as described in the First Cause of Action, AB 5 violates Article I, Section 3(b)(4) of the California Constitution.

79.     Plaintiffs will be deprived of equal protection under the law in violation of the California Constitution if AB 5 is enforced against them.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

### THIRD CAUSE OF ACTION

**(Declaratory Relief: Violation of the California Constitution's Inalienable Rights Clause)**

80.     Plaintiffs reallege and reincorporate Paragraphs 1 through 79 of this Complaint as though fully set forth herein.

81.     AB 5 violates Article I, Section 1 of the California Constitution, which provides: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing

1    and obtaining safety, happiness, and privacy."

2        82.    AB 5 violates this provision because it infringes the rights of the Data Processors and

3    Collectors to pursue their chosen profession, which is an essential component of liberty, property,

4    happiness, and privacy. Signature collection work is an occupation, even if it is a specific or

5    particular one. AB 5 infringes the right to pursue this occupation. It also infringes the rights of the

6    Data Processors, Collectors, and Data Processors' downstream clients to make contracts governing

7    their occupations and purchases, and to associate with one another. The freedom to enter into their

8    own work agreements, and to buy services from willing sellers, is of paramount importance to Data

9    Processors, Collectors, and customers. The right to pursue their chosen occupation is the very

10    essence of the Collectors' and Data Processors' personal freedom and opportunity. Indeed, to the

11    extent it is enforced to reclassify the Collectors as employees, AB 5 deprives both the Collectors

12    and Data Processors of these rights by forbidding them from entering into their chosen work

13    arrangements—that of independent service providers, with the flexibility and autonomy that entails.

14    Such enforcement would also impose massive obligations on both the Data Processors (who must

15    comply with a host of laws governing employers) and the Collectors (who must comply with duties

16    that bind employees, such as the duty of loyalty to one's employer). In addition, mandatory

17    reclassification would not only replace the Collectors' chosen working relationships with an entirely

18    different one, but it also would force many Collectors out of work entirely, because the Data

19    Processors cannot hire every Collector as an employee.

20        83.    The interference with, and deprivation of, the above-listed rights is unreasonable and

21    arbitrary. AB 5 is not narrowly tailored to any compelling governmental interest, nor is it the least

22    restrictive means to serve any such end. It is not even rationally related to any legitimate

23    governmental interest. It has no substantial relation to the public, health, safety, or morals, or to the

24    general welfare, and it is incongruous with any legitimate purpose the government may proffer.

25    Further, AB 5 is unrelated to serving any interest in worker protection because it outlaws working

26    relationships of the workers' own choosing and undermines their flexibility and autonomy by

27    imposing rigid and duty-laden employer/employee relationships.

28        WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

WILKE FLEURY LLP
ATTORNEYS AT LAW
SACRAMENTO

1

**FOURTH CAUSE OF ACTION**

2

**(Declaratory Relief: Violation of the U.S. Constitution's Due Process Clause—Right To**

3

**Pursue Chosen Occupation)**

4     84.     Plaintiffs reallege and reincorporate Paragraphs 1 through 83 of this Complaint as

5     though fully set forth herein.

6     85.     For substantially the same reasons as set forth in the Third Cause of Action, AB 5

7     violates the Due Process Clause of Section 1 of the Fourteenth Amendment to the United States

8     Constitution.

9     86.     In addition, California businesses have a constitutionally protected interest in

10    operating free from unreasonable governmental interference. Businesses are therefore protected

11    from baseless or invidiously discriminatory standards and have a right to be free from excessive and

12    unreasonable government conduct intentionally directed toward them to force them out of business.

13    87.     The Legislature's circuitous path to legitimate ends, when a direct path is available,

14    shows that AB 5 lacks a rational basis. If California wanted to provide independent service

15    providers, like Collectors, access to certain benefits and protections, it could have passed more direct

16    and less restrictive measures to achieve that end.

17    88.     The language and effect of the statute—combined with the back-room dealing that

18    led to its laundry list of irrational exemptions—creates a "wholly arbitrary" standard in violation of

19    due process.

20    WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

21

**FIFTH CAUSE OF ACTION**

22

**(Declaratory Relief: Violation of the California Constitution's Due Process Clause: Right To**

23

**Pursue Chosen Occupation)**

24    89.     Plaintiffs reallege and reincorporate Paragraphs 1 through 88 of this Complaint as

25    though fully set forth herein.

26    90.     For substantially the same reasons set forth in Third and Fourth Causes of Action,

27    AB 5 violates the Due Process Clause of Article I, Section 7 of the California Constitution.

28    WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

WILKE FLEURY LLP
ATTORNEYS AT LAW
SACRAMENTO

2535779.4                          -25-                          Case No.
                        CLASS ACTION COMPLAINT

## SIXTH CAUSE OF ACTION

**(Declaratory Relief: Violation of the U.S. Constitution's Due Process Clause—Impermissible Restriction on Political Speech)**

91.    Plaintiffs reallege and reincorporate Paragraphs 1 through 90 of this Complaint as though fully set forth herein.

92.    The First Amendment to the United States Constitution, as made applicable to the States via the Fourteenth Amendment to the United States Constitution, prohibits the enaction of any law "abridging the freedom of speech, or of the press, or of the right of people peaceably to assemble." Any state law that infringes on any of these rights is a violation of the Due Process Clause of the Fourteenth Amendment.

93.    The protections collectively afforded by the First and Fourteenth Amendments include the right to petition, and to solicit support or opposition to political initiatives.

94.    As noted, various laws of public benefit have come to exist as a direct result of the signature collection process discussed herein, including those noted in Paragraph 61, *supra*. The continuing raising, vetting, and adoption of similar measures of public benefit would be directly threatened if AB 5 was allowed to force a reclassification of Collectors as employees rather than independent contractors. The situation is made all the more acute when, as discussed above, there is no legitimate basis for treating Collectors differently from other, similarly-situated independent service providers.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## SEVENTH CAUSE OF ACTION

**(Declaratory Relief: Violation of the California Constitution's Due Process Clause: Impermissible Restriction on Political Speech)**

95.    Plaintiffs reallege and reincorporate Paragraphs 1 through 94 of this Complaint as though fully set forth herein.

96.    For substantially the same reasons set forth in the Sixth Cause of Action, AB 5 violates the Due Process Clause of Article I, Section 7 of the California Constitution.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

WILKE FLEURY LLP
ATTORNEYS AT LAW
SACRAMENTO

2535779.4

-26-

CLASS ACTION COMPLAINT

Case No.

## EIGHTH CAUSE OF ACTION

**(Declaratory Relief: Violation of California Constitution, Article I, Sections 2 and 3)**

97.     Plaintiffs reallege and reincorporate Paragraphs 1 through 96 of this Complaint as though fully set forth herein.

98.     Article I, Section 2(a) of the California Constitution provides that "[e]very person may freely speak, write, and publish his or her sentiments on all subjects, being responsible for the abuse of this right.  A law may not restrain or abridge liberty of speech or press." Article I, Section 3 of the California Constitution states that "[t]he people have the right to instruct their representatives, petition government for redress of grievances, and assemble freely to consult for the common good." For substantially the same reasons as set forth in the Sixth and Seventh Causes of Action, AB 5 violates both of these provisions.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## NINTH CAUSE OF ACTION

**(Declaratory Relief: Violation of the U.S. Constitution's Ninth Amendment)**

99.     Plaintiffs reallege and reincorporate Paragraphs 1 through 98 of this Complaint as though fully set forth herein.

100.     For substantially the same reasons set forth in the Third through Eighth Causes of Action, AB 5 violates the Ninth Amendment to the United States Constitution.

101.     The language and history of the Ninth Amendment reveal that the Framers of the Constitution believed that there are additional fundamental rights, protected from governmental infringement, which exist alongside those fundamental rights specifically mentioned in the first eight constitutional amendments. The right to work on one's own terms—as an independent service provider, rather than an employee—is one of those fundamental rights.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## TENTH CAUSE OF ACTION

**(Declaratory Relief: Violation of the California Constitution's Baby Ninth Amendment)**

102.     Plaintiffs reallege and reincorporate Paragraphs 1 through 101 of this Complaint as though fully set forth herein.

103.    For substantially the same reasons set forth in the Third through Ninth Causes of Action, AB 5 violates Article I, Section 24 of the California Constitution.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## ELEVENTH CAUSE OF ACTION

**(Declaratory Relief: Violation of the California Constitution's Due Process Clause)**

104.    Plaintiffs reallege and reincorporate Paragraphs 1 through 103 of this Complaint as though fully set forth herein.

105.    For substantially the same reasons as described in the First through Tenth Causes of Action, Company Plaintiffs would be deprived of due process in violation of Article I, Section 7 of the California Constitution if AB 5 is enforced against them as the statute's sponsors intend.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## TWELFTH CAUSE OF ACTION

**(Declaratory Relief: Violation of the U.S. Constitution's Contracts Clause)**

106.    Plaintiffs reallege and reincorporate Paragraphs 1 through 105 of this Complaint as though fully set forth herein.

107.    Article 1, Section 10 of the Constitution provides: "No state shall...pass any...Law impairing the Obligation of Contracts."

108.    Company Plaintiffs are parties to valid contracts with the Collectors, including Individual Plaintiffs. These contracts establish that the Collectors are independent contractors for the purposes of their work.

109.    If AB 5 were enforced consistent in a way that required the Data Processors to reclassify Collectors as employees, the above-mentioned contracts between the Data Processors and the Collectors, including the Company Plaintiffs' contracts with the Individual Plaintiffs, would be invalidated.

110.    Such reclassification of the Collectors would substantially impair existing contracts between the Data Processors and the Collectors, including the Company Plaintiffs' contracts with the Individual Plaintiffs.

111.    The classification of the Collectors as independent contractors under the existing contracts between the Data Processors and the Collectors, including the Company Plaintiffs' contracts with the Individual Plaintiffs, is a critical feature of the Data Processors' total contractual relationship with the Collectors.

112.    If AB 5 were enforced in a way that required reclassification of the Collectors as employees, it would severely modify a key contractual right in existing contracts between the Data Processors and the Collectors, including the Company Plaintiffs' contracts with the Individual Plaintiffs.

113.    If AB 5 were enforced in a way that required reclassification of the Collectors as employees, it would impose new obligations under the existing contracts between the Data Processors and the Collectors—including the Company Plaintiffs' contracts with the Individual Plaintiffs—that the Data Processors and the Collectors did not voluntarily agree to undertake, such as providing health insurance, unemployment coverage, and other employment benefits.

114.    If AB 5 were enforced in a way that required reclassification of the Collectors as employees, it would wipe out numerous contractual obligations between the Data Processors and the Collectors, including those between the Company Plaintiffs and the Individual Plaintiffs, under their existing contracts.

115.    If AB 5 were enforced in a way that required reclassification of the Collectors as employees, it would eliminate the critical flexibility that the Collectors, including the Individual Plaintiffs, are guaranteed under their existing contracts with the Company Plaintiffs and other Data Processors.

116.    If AB 5 were enforced in a way that required reclassification of the Collectors as employees, it would severely undermine the contractual bargain between the Data Processors and the Collectors, including the Company Plaintiffs and the Individual Plaintiffs, under the existing contracts, because AB 5 eliminates the very essence of the contractual bargain in these existing contracts.

117.    If AB 5 were enforced in a way that required reclassification of the Collectors as employees, it would substantially interfere with the reasonable expectations under existing contracts

1  between the Data Processors and the Collectors, including the Company Plaintiffs' contracts with

2  the Individual Plaintiffs, because reclassification eliminates the primary value of those contracts.

3      118.    The Company Plaintiffs and the Individual Plaintiffs had no reason to anticipate that

4  AB 5, if enforced in a way that required reclassification of the Collectors as employees, would

5  effectuate a dramatic departure from California's prior treatment of the existing contracts between

6  the Data Processors and the Collectors, including the Company Plaintiffs' contracts with the

7  Individual Plaintiffs, when they bargained for these contracts.

8      119.    The classification of the Collectors, including the Individual Plaintiffs, as

9  independent contractors in the existing contracts between the Data Processors and the Collectors,

10  including the Company Plaintiffs' contracts with the Individual Plaintiffs, had "obvious value" and

11  was a significant factor in the Company Plaintiffs' bargaining expectations when entering into these

12  contracts.

13      120.    AB 5's purported reclassification of the Collectors, including the Individual

14  Plaintiffs, as employees of the Data Processors, including the Company Plaintiffs, prevents the

15  parties from safeguarding or reinstating the rights held in the existing contracts.

16      121.    AB 5 is not drawn in an appropriate and reasonable way to advance a significant and

17  legitimate public purpose; to the contrary, AB 5 has no legitimate public purpose because the statute

18  was enacted to target and harm entities like Company Plaintiffs.

19      122.    AB 5's impairment of the existing contracts between the Company Plaintiffs and the

20  Collectors, including the Individual Plaintiffs, was not drawn with moderation and reason because

21  it was drawn with the spirit to target and harm the Company Plaintiffs.

22      123.    AB 5's irrational exemptions demonstrate California did not exercise the police

23  power in passing it, but instead sought to provide a benefit to special interests while harming other

24  groups, like Company Plaintiffs.

25      124.    AB 5 does not reasonably advance the purpose of protecting workers because its

26  exemptions leave numerous workers outside of its scope without any rational rhyme or reason.

27      125.    AB 5's arbitrary and internally inconsistent/incompatible nature demonstrates that it

28  was not enacted to protect any broad societal interest.

126.    AB 5's ostensible legislative purpose of helping workers is "suspect" because the Legislature exempted some workers and groups from its purview, while not exempting similar other workers and groups, without explaining the necessity for such exemptions to advance AB 5's legislative purpose.

127.    The forced reclassification AB 5's sponsors intended would unreasonably and substantially impair the existing contracts between the Data Processors and the Collectors, including the Company Plaintiffs' contracts with the Individual Plaintiffs, because an evident and more moderate course would have served the State's purported purpose equally well.

128.    If forced reclassification as employees was necessary to protect workers, then the California Legislature would not have irrationally some workers, but not similarly-situated others, from its purview.

129.    In light of the above, AB 5 violates the Contracts Clause of the United States Constitution, and this violation is actionable under 42 U.S.C. section 1983.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

### THIRTEENTH CAUSE OF ACTION

### (Declaratory Relief: Violation of the California Constitution's Contracts Clause)

130.    Plaintiffs reallege and reincorporate Paragraphs 1 through 129 of this Complaint as though fully set forth herein.

131.    For substantially the same reasons as described in the Ninth Cause of Action, enforcement of AB 5 against Company Plaintiffs also would violate Article I, Section 9 of the California Constitution, which provides that a "law impairing the obligation of contracts may not be passed."

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

### FOURTEENTH CAUSE OF ACTION

### (Declaratory Relief: Non-Employee Status Under AB 5's ABC Test)

132.    Plaintiffs reallege and reincorporate Paragraphs 1 through 131 of this Complaint as though fully set forth herein.

133.    In the alternative to the relief sought elsewhere in this Complaint, Plaintiffs seek a

declaration that the Individual Plaintiffs remain independent contractors when working as Collectors for the Company Plaintiffs. In that regard, and as discussed above, an actual controversy has arisen and now exists between Plaintiffs and Defendants relating to their respective rights and duties. Specifically, a present and justiciable dispute exists with regard to whether the Individual Plaintiffs are employees under the ABC test imposed by AB 5, in that (a) Plaintiffs contend that the Individual Plaintiffs are independent contractors, while (b) Defendants apparently contend that the Individual Plaintiffs are employees.

134.    Given the existence of the above-referenced dispute between the parties, a declaration from this Court regarding the status of the Individual Plaintiffs under the ABC test is proper under 27 U.S.C. sections 2201 and 2202, as well as Federal Rule of Civil Procedure 57, and necessary in order for Plaintiffs and similarly-situated persons and entities to be apprised of their rights and duties relative to Collector classification. Such a declaration will also alleviate the need for Plaintiffs to risk a "violation" of AB 5.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

### FIFTEENTH CAUSE OF ACTION

### (Injunctive Relief)

135.    Plaintiffs reallege and reincorporate Paragraphs 1 through 134 of this Complaint as though fully set forth herein.

136.    Defendants should be preliminarily and permanently enjoined from enforcing AB 5 against Company Plaintiffs.

137.    If enforcement of AB 5 was to force the reclassification of the Individual Plaintiffs from independent contractors to employees, the Individual Plaintiffs would suffer severely and irreparably. As independent contractors, the Individual Plaintiffs rely heavily on their independence and flexibility for their income, and to provide for their families. Absent an injunction, they will suffer severe and irreparable harm.

138.    If required to reclassify the Collectors as employees, the Company Plaintiffs would incur immediate injury for which there is no adequate remedy at law, including because the statute violates their constitutional rights, threatens their business models, and forces them to incur

1  unrecoverable administrative and compliance costs. Constitutional violations constitute per se

2  irreparable harm.

3      139.   Forced reclassification also would require the Company Plaintiffs to retrain staff,

4  consult with legal counsel, and develop new compensation, benefits, and other policies.

5      140.   These injuries would result directly from enforcement of AB 5, and could not be

6  adequately compensated by money damages, and would be irreparable absent preliminary and

7  permanent injunctive relief.

8      141.   These injuries are preventable and redressable with appropriate injunctive relief that

9  prevents Defendants from giving effect to or enforcing the statute against the Company Plaintiffs.

10      142.   The balance of harms weighs in favor of injunctive relief. Defendants cannot claim

11  an interest in the enforcement of an unconstitutional law. Nor can they plausibly claim harm from

12  an injunction prohibiting enforcement of a statute that purports merely to clarify preexisting law.

13      143.   The public interest favors injunctive relief because many members of the public

14  depend on their contractor status as a way to earn income without the burdens and rigid demands of

15  a traditional 9-to-5 job.

16      144.   Moreover, enforcement of AB 5 to classify Collectors as employees would, as noted

17  above, have an irreparably harmful chilling effect on the ability of interested parties to seasonably

18  secure public support for the placement of important initiatives on the election ballot.

19      WHEREFORE, Plaintiffs pray for relief as follows:

20                              **PRAYER FOR RELIEF**

21      Plaintiffs ask this Court to order appropriate relief, including, but not limited to, the

22  following:

23      1.   Enter a judgment declaring that AB 5 is invalid and unenforceable against Company

24  Plaintiffs because enforcement as intended by the statute's sponsors would violate the equal

25  protection clauses of the United States Constitution and the California Constitution;

26      2.   Enter a judgment declaring that AB 5 is invalid and unenforceable against Company

27  Plaintiffs because enforcement as intended by the statute's sponsors would violate the Inalienable

28  Rights Clause of the California Constitution, due process clauses of the California Constitution and

WILKE FLEURY LLP
ATTORNEYS AT LAW
SACRAMENTO

1   the Fourteenth Amendment to the United States Constitution, the Ninth Amendment to the United

2   States Constitution, and/or the Baby Ninth Amendment to the California Constitution;

3         3.    Enter a judgment declaring that AB 5 is invalid and unenforceable against Company

4   Plaintiffs because enforcement would violate the contracts clauses of the United States Constitution

5   and/or the California Constitution;

6         4.    Enter a judgment declaring that the Individual Plaintiffs are independent contractors,

7   rather than employees, under AB 5's ABC test;

8         5.    Enter a temporary restraining order and/or preliminary injunction, pending final

9   resolution of this action, enjoining Defendants from taking any action to enforce AB 5 against

10  Company Plaintiffs;

11        6.    Enter a permanent injunction enjoining Defendants from taking any action to enforce

12  AB 5 against Company Plaintiffs;

13        7.    Grant Plaintiffs an award of reasonable attorney's and/or expert fees under 42 U.S.C.

14  § 1988; and

15        8.    Grant Plaintiffs such additional or different relief as the Court deems just and proper.

16        Respectfully submitted,

17  DATED:  February 20, 2020        WILKE FLEURY LLP

18

19

      By:            /s/ Dan Baxter

20              DAN BAXTER

21              Attorneys for Plaintiffs
            MICHAEL CROSSLEY; BART BAILEY; LET

22              THE VOTERS DECIDE, LLC; VALLEY
            DIRECT MARKETING LLC; IN THE FIELD,

23              INC.; DISCOVERY PETITION MANAGEMENT
            LLC; PIR DATA PROCESSING INC.;

24              CAROLYN OSTIC dba VOTER DIRECT, and
            CHRIS BRENTLINGER dba BAY AREA

25              PETITIONS

26

27  **DEMAND FOR JURY TRIAL**

28      Plaintiffs demand trial by jury on all issues so triable.